# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60763

United States Court of Appeals
Fifth Circuit

**FILED**

December 15, 2016

Lyle W. Cayce
Clerk

WEST TEXAS LTC PARTNERS, INCORPORATED,
  Doing Business as Cedar Manor,

Petitioner,

versus

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Petition for Review of a Decision of the
United States Department of Health and Human Services,
Departmental Appeals Board

Before STEWART, Chief Judge, SMITH and DENNIS, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

West Texas LTC Partners, Incorporated, doing business as Cedar Manor Nursing & Rehabilitation Center ("Cedar Manor"), petitions for review of a final decision of the Departmental Appeals Board ("DAB") of the U.S. Department of Health and Human Services ("HHS"). Because the decision is neither arbitrary and capricious nor unsupported by substantial evidence, we deny the

No. 15-60763

petition for review.

I.

Cedar Manor is a long-term-care facility in San Angelo, Texas. As a skilled-nursing facility, it is subject to periodic surveys to ensure that it remains in substantial compliance with Medicare regulations.[1] The surveys are conducted by a designated state agency on behalf of the Centers for Medicare & Medicaid Services ("CMS") of HHS. The findings are reviewed by CMS, and civil money penalties ("CMPs") or other remedies may be imposed by the Secretary of HHS if the facility is found noncompliant.

In December 2013, Cedar Manor was surveyed by the Texas Department of Aging and Disability Services ("DADS"). The surveyor found Cedar Manor out of compliance with three regulations[2] after observing the care provided to two wheelchair-bound residents, Resident #1 and Resident #4. The surveyor found that the facility had allowed the straps of a Hoyer sling[3] and catheter tubing to hang near the wheels of Resident #1's wheelchair, causing him to fall from the chair, breaking both of his femurs. Also, Hoyer sling straps were hanging in a dangerous position on the wheelchair of Resident #4.

In January 2014, DADS found independent violations of three regulations regarding pressure-sore prevention.[4] Resident #7 is a ninety-one-year-old woman who has a high risk of developing pressure sores. The surveyor

---

[1] We cite the regulations as they were numbered at the time of the proceedings at issue. To avoid confusion, however, we note that there was a major revision of the pertinent regulations effective November 28, 2016. Title 42 C.F.R. § 483.13(c) is now § 483.12(b)(1); § 483.25(h) is now § 483.25(d); § 483.75 is now § 483.70; § 483.25(c) is now § 483.25(b)(1) and has slightly different wording; § 483.65 is now § 483.80; and § 483.75(f) is now § 483.35(c).

[2] 42 C.F.R. §§ 483.13(c), 483.25(h)(1)–(2), and 483.75.

[3] A Hoyer sling is a lifting device used to assist patients in and out of their wheelchairs.

[4] 42 C.F.R. §§ 483.25(c), 483.65, and 483.75(f).

2

No. 15-60763

observed a Cedar Manor employee giving her improper perineal care and failing to recognize two pressure sores.

For the two sets of violations, CMS recommended two CMPs: $6,050 per day for three days because of the "immediate hazard" created by the dangling Hoyer sling straps and $350 per day for forty-two days, to run consecutively from the end of the "immediate hazard" penalty. Cedar Manor appealed the findings and CMPs and requested a hearing before an administrative law judge ("ALJ"). CMS moved for summary judgment on all of the violations after the briefing and evidence were submitted. The ALJ granted summary judgment and upheld the CMPs. On *de novo* review, the Departmental Appeals Board ("DAB") affirmed.

## II.

We have jurisdiction under 42 U.S.C. § 1320a-7a(e) to review findings of noncompliance and the imposition of CMPs. Such decisions are reviewed under the "deferential standards of the Administrative Procedures Act ("APA"), which permits the setting aside of agency actions, findings, and conclusions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' or 'unsupported by substantial evidence.'" *Cedar Lake Nursing Home v. HHS*, 619 F.3d 453, 456 (5th Cir. 2010) (quoting 5 U.S.C. §§ 706(2)(A)–(E)).

Cedar Manor contends that because the DAB's decision affirmed a summary judgment, it should be reviewed *de novo*, just as a district court's summary-judgment ruling would. We rejected that theory in *Cedar Lake*, where the facts were similar. There is no coherent way to distinguish the circumstances of this petition for review from those in *Cedar Lake*, in which we also observed that "we review this petition consistent with the deferential standards of the APA, 5 U.S.C. §§ 706(2)(A)–(E)." *Cedar Lake*, 619 F.3d at 457.

No. 15-60763

A.

The December survey resulted in findings of noncompliance with 42 C.F.R. §§ 483.13(c), 483.25(h), and 483.75. DADS affirmed the summary judgment for each of the four deficiencies under those regulations. We decline to review any of them, because they are neither arbitrary and capricious nor unsupported by substantial evidence. *See Cedar Lake*, 619 F.3d at 456.

1.

Two of the findings of noncompliance arose from the requirement that the facility "develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents and misappropriation of resident property." 42 C.F.R. § 483.13(c). "[F]ailure to either develop or implement the required procedures is sufficient to preclude substantial compliance." *Miss. Care Ctr. v. HHS*, 517 F. App'x 209, 213 (5th Cir. 2013).

Cedar Manor does not dispute the facts that support the findings of noncompliance. Cedar Manor failed to secure the Hoyer straps on Resident #1's wheelchair despite repeated warnings from his family. Cedar Manor took no other preventive action, such as providing Resident #1 with better supervision. Resident #1 then suffered a fall and two broken femurs after those straps became tangled in the wheels of his chair. Furthermore, even after such an accident, Cedar Manor did not secure the straps on Resident #4's wheelchair, the second deficiency finding.

Cedar Manor's counter-arguments are not about the facts themselves, but are legal questions about the coverage of the regulation. Cedar Manor submits that neither isolated incidents nor a generalized finding of neglect can be the basis for a finding of noncompliance with Section 483.13(c). Cedar Manor identifies the decision of one ALJ who refused to infer, from an isolated incident, a failure to implement policy. *See Heron Pointe Health & Rehab.*,

No. 15-60763

No. CR1401, 2006 WL 321181, at *8–9 (2006). But prior ALJ decisions are not binding on the DAB or other ALJs, and *Heron Pointe*'s reasoning on this issue has been rejected.[5] Thus, the DAB's findings of noncompliance with this regulation were neither arbitrary and capricious nor unsupported by substantial evidence.

## 2.

The December survey found that Cedar Manor had failed to ensure that "[t]he resident environment remain[ed] as free of accident hazards as is possible; and (2) Each resident receive[d] adequate supervision and assistance devices to prevent accidents." 42 C.F.R. § 483.25(h). Again, the facts regarding the Hoyer straps on Resident #1 and Resident #4's wheelchairs are undisputed. Cedar Manor contends that Resident #4 never fell out of the wheelchair, but that is irrelevant to whether the facility was in substantial compliance with a regulation regarding accident-prevention. *See Clermont Nursing & Convalescent Ctr.*, DAB No. 1923, 2004 WL 1764714, at *12 (2004). The DAB's finding of noncompliance with Section 483.25(h) was neither arbitrary and capricious nor unsupported by substantial evidence.

## 3.

The December survey found that Cedar Manor was out of substantial compliance with the requirement that the "facility . . . be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident." 42 C.F.R. § 483.75. Noncompliance with

---

[5] *Britthaven of Chapel Hill*, DAB No. 2284, 2009 WL 4519868, at *4 (2009) (holding that an ALJ decision is not binding on the DAB or other ALJs); *see, e.g.*, *Oceanside Nursing & Rehab Ctr.*, DAB No. 2382, 2011 WL 3251314, at *6 (2011) (rejecting the reasoning of *Heron Pointe*).

No. 15-60763

Section 483.75 "is a derivative finding, based on the presence of other deficiencies." *Asbury Ctr. v. HHS*, 77 F. App'x 853, 857 (6th Cir. 2003). Such findings were appropriate as discussed above. Furthermore, Resident #4's nurse aide told the surveyor that she had not been trained in the operation of the Hoyer sling. Therefore the finding of noncompliance with Section 483.75 was neither arbitrary and capricious nor unsupported by substantial evidence.

## B.

The January survey resulted in findings that Cedar Manor was non-compliant with 42 C.F.R. §§ 483.25(c), 483.65, and 483.75(f). The DAB affirmed the summary judgment on each finding of noncompliance, and there is sufficient evidence to support each of them. *See Cedar Lake*, 619 F.3d at 456.

## 1.

The January survey found that Cedar Manor failed to "ensure that—(1) A resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable; and (2) A resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing." 42 C.F.R. § 483.25(c). A failure to provide care in accordance with the patient's care plan can constitute a violation of this regulation. *See Windsor Place v. HHS*, 649 F.3d 293, 299 (5th Cir. 2011). In the case of Resident #7, the care plan called for nurses to "[c]leanse [Resident #7's] perineal area with soap and water following each urination," and to change gloves prior to applying barrier cream that help[s] prevent pressure sores. The affidavit of the Director of Nursing, regarding the incident, does not dispute the material facts and reveals she was not present when the care was provided. Cedar Manor disputes the number of pressure sores found on Resident #7, but that was not the basis for the finding of noncompliance and is thus not

6

No. 15-60763

material. The DAB's holding is neither arbitrary and capricious nor unsupported by substantial evidence.

2.

Title 42 C.F.R. § 483.65 requires that "[t]he facility must establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of disease and infection." The undisputedly deficient perineal care that Resident #7 received counter to the care plan is also sufficient to support the DAB's holding as to this regulation. That Cedar Manor maintains infection control policies and in-service training does not create a material dispute over the failure to implement those policies when providing care.

3.

The third January noncompliance finding arose from a failure to "ensure that nurse aides are able to demonstrate competency in skills and techniques necessary to care for residents' needs, as identified through resident assessments, and described in the plan of care." 42 C.F.R. § 483.75(f). "Demonstrating competency in a skill set requires correctly carrying skills out." *Heritage House of Marshall Health & Rehab. Ctr.*, DAB No. 2566, 2014 WL 2921190, at *13 (2014). Cedar Manor offered evidence of its nurse's training and experience but nothing to contest that the nurse had provided improper perineal care. Cedar Manor relies on a previous ALJ decision that found that a trained nurse's actions that did not cause actual harm was still substantially compliant. *See Mabee Health*, DAB No. CR2525, 2012 WL 1670506, at *9. But prior ALJ decisions are not binding on the DAB, and *Heritage House* distinguished the "more than minimal harm" of improper perineal care from the failure to use proper lifting procedures in *Mabee*. *Heritage House*, 2014 WL 2921190, at *13. The DAB's decision was neither arbitrary and capricious nor

7

No. 15-60763

unsupported by substantial evidence.

III.

Cedar Manor contests the imposition of the $350-per-day CMPs for the period after a DADS survey found that the December violations had cleared on January 16, 2014, but before the subsequent survey found the violations related to Resident #7 on January 27, 2014. The imposition of CMPs is also reviewed using the same deferential APA standard. *Cedar Lake*, 619 F.3d at 456. The penalties for this alleged gap period will be upheld if there is substantial evidence to support that conclusion and it is not arbitrary and capricious. *Id.*

CMS has the authority to impose CMPs on facilities that are out of substantial compliance with the Medicare regulations. 42 C.F.R. § 488.400. The penalties continue until "[t]he facility has achieved substantial compliance, as determined by CMS or the State based upon a revisit or after an examination of credible written evidence . . . ." 42 C.F.R. § 488.454(a)(1). CMS's determination that a facility has not achieved substantial compliance takes precedence over a decision by a state agency that a facility is in substantial compliance. 42 C.F.R. § 488.452(a)(2). Furthermore, a state agency's finding that past deficiencies have cleared is not equivalent to a finding that the facility is in substantial compliance. *Meadowbrook Manor—Naperville*, DAB No. 2173, 2008 WL 2625664, at *9 (2008).

Despite the fact that DADS determined that the December violations had cleared on January 16, 2014, it did not issue a finding that Cedar Manor had achieved substantial compliance. On February 18, 2014, CMS certified that it had achieved substantial compliance as of February 1, 2014. That finding of substantial compliance controls over the DADS finding that prior violations had cleared. *See* 42 C.F.R. § 488.452(a)(2). Cedar Manor maintains

8

that CMS's findings of substantial compliance focus on the January survey violations and include no other evidence that Cedar Manor was out of substantial compliance during this gap period. But, the burden to prove that a facility has returned to substantial compliance is on the facility, not CMS.[6] Cedar Manor has not provided evidence to meet that burden beyond the DADS finding, and it was not arbitrary or capricious for the DAB to impose the penalties for the gap period.

The summary-judgment findings and the imposition of CMPs by the DAB are neither arbitrary nor capricious and are supported by substantial evidence. The petition for review is DENIED.

---

[6] *See, e.g., Chi. Ridge Nursing Ctr.,* DAB No. 2151, 2008 WL 546360, at *17 (2008) ("We have consistently rejected the contention, as being contrary to the structure and purposes of the nursing home enforcement scheme, that CMS must affirmatively prove that noncompliance exists on each day that a remedy is in effect after the first day of noncompliance.").